FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
* JUNE 25, 2025 *
BROOKLYN OFFICE
Case Number: 25-CV-3537 Magistrate
Judge Kuo

UNITED STATES DISTRICT COURT EASTERN

DISTRICT OF NEW YORK

------------------------------------------------------------------X

ELDIVINE STARKIM ALLAH-EL,

                    Plaintiff,

                                    Index No.

                        **COMPLAINT FOR DAMAGES**

 -against-

ALLIED UNIVERSALServices ("Universal Protection Services")
 & COLUMBIA UNIVERSITY ("Columbia Board of Trustees" or
"Columbia"),
Defendants.
------------------------------------------------------------------X

Plaintiff, through his attorney, Adebukola T. Ogunsanya, Esq, files this complaint against Allied

Universal Services ("AUS") and Columbia University ("Columbia") alleges as follows:


## <u>REQUEST FOR EQUITABLE TOLLING (BASED ON NON-RECEIPT OF RIGHT TO SUE NOTICE).</u>

1) Plaintiff filed a timely charge of Title VII discrimination with the New York State Division of Human Rights (NYSDHR) in February 2022 against both defendants. Under the administrative work sharing agreement with the EEOC, this filing constituted a dual filing of the pursuant to 29 C.F.R section 1601.13(a)(4), granting EEOC jurisdiction.

2) The EEOC typically issues a right-to-sue letter upon closure of the state complaint. However, Plaintiff did not receive these notices until submitting FOIA requests in 2025:

- On April 23, 2025, Plaintiff received a copy of a Right to Sue Notice dated October 21, 2022, for EEOC charge 16G-2022-01963 via email from EEOC representative Hernan Morales. **(Pl.'s Exhibit 1).**

- On May 20, 2025, Plaintiff received a copy of a right to sue notice dated October 7, 2022 for EEOC Charge No.16G-2022-01543. again via EEOC representative Hernan Morales, **(Pl.'s Exhibit 2).**

3) Under 42 U.S.C. section 2000e-5(f)(1), a civil action must be filed within 90 days of receiving the EEOC's right-to-sue letter. Plaintiff invokes equitable tolling asserting that:

a.  Extraordinary circumstances beyond Plaintiff's control: In this case, Plaintiff was made homeless as a direct result of the actions of the Defendant's discriminatory actions which resulted in loss of his apartment; battling an necrotizing bacteria infection to his scrotum while on the job at Columbia University which resulted in an hospitalization after completing his shift, and inability to receive any constructive notices from the EEOC. Likewise, it appears neither defendants had actual or constructive notice from the EEOC. Likewise, Plaintiff had the unfortunate experience of hiring counsel through NoloLegal Network who turned out to be unlicensed and indicted by the Manhattan D.A. office. See, D.A. Bragg Announces Indictment Against Fake Attorney For Stealing $200,000.00 From Clients. https://manhattanda.org/d-a-bragg-announces-indictment-against-fake-attorney-for-stealing-200000-from-clients-2/ (2025).

b.  Diligent Efforts were made. Plaintiff acted with reasonable diligence in pursuing his rights by (a) filing the respective charges in 2022; performing a FOIA request

2

to receive his complete file from the NY Department of , and, (c) promptly seeking an attorney to secure his right to sue notices or determine if one was issued by the EEOC on or around April 2025 upon receipt of his FOIA request from the New York Department of Human Rights.

c.  Causal link between the circumstances and filing delay extraordinary circumstances to file. Plaintiff's inability to receive EEOC correspondence and maintain stable housing was directly linked to the alleged discriminatory acts.

d.  Therefore, the 90-day limitation period began on April 23, 2025 (for Columbia) and May 20, 2025 (for AUS), respectively.This Complaint is timely under the doctrine of equitable tolling.

See, Zerilli- Edelglass v. New York City Authority, 333 F. 3d. 74 (2nd Cir. 2003)

For the foregoing reasons, Plaintiff requested that this case was not ripe for suit until this present moment. Under the statutory regulations, the 90 day filing deadline begins effective 4/23/25 and 5/20/25 respectively. Hence, the Plaintiff has until August 18, 2025 due to the extraordinary circumstances and the equitable tolling doctrine.

## PARTIES

4) Plaintiff is a resident of New York City and a person over the legal age of 18 years Old.

5) Defendant Allied Universal Security also goes by the business name Allied Protection Services.

6) Defendant, Columbia University is a top college education institution in the Country.

3

## INTRODUCTION

7)    Plaintiff is a resident of New York City and a person over the age of 18 years old.

8)    Plaintiff was employed by vendor - Allied Universal Security for the position of security guard/shuttle driver.

9)    On August 5, 2021, Plaintiff was prevented from completing an interview for a direct hire position with Columbia University for a direct hire position willingly precluded from completing his interview for a direct- hire position with Columbia University due to alleged COVID-19 vaccination requirements and purported improper appearance., despite prior informal approval for casual dress due to a pre-existing medical condition.

10)    Plaintiff was terminated by AUS on or about September 9, 2021 in retaliation for asserting religious exemption rights.

11)    Defendant Columbia University is a private Ivy league Institution in New York City.

12)    Allied Universal is a national private security contractor that placing employees at client sites, including Columbia University.

13)    Both Defendants maintain a vendor-client relationship and are subject to federal and state regulations as federal contractors.

## JURISDICTION AND VENUE

14)    This Court has jurisdiction conferred by virtue of 28 U.S.C. 1391. citizenship of the parties within New York. threshold damages sought at over $75,000.00 and Defendants status as federal contractors within the Eastern District of New York.

# FACTS AND ALLEGATION

15)    In <u>Doe v. The Board of Regents of the University of Colorado et al.</u> 100 F. 4th 1251 (10th Cir 2024), a government employer may not punish some employees, but not others, for the same activity, due only to difference in the employee's religious beliefs.

16)    Plaintiff was hired by Defendant AUS as a security guard/shuttle driver with responsibilities of picking students up and dropping them off their dormitories or premises on the Columbia campus. As a mobile patrol officer with responsibilities of picking up Columbia University employees from different on campus sites.

17)    Plaintiff was employed full time to work 12 hour shifts from November 19, 2019 through June 6, 2021.

18) Throughout his employment from November 19, 2019 through June 6, 2021, Plaintiff had maintained a stellar record, free of misconduct or disciplinary issues with vendor- AUS and client- Columbia University.

19) On or around May 14th, 2021, Defendant- Columbia implemented a vaccination mandate on its employees and staff. On its website. Defendant Columbia University noted that a religious and medical exemption policy was available to its students. staff. employees and affiliates. In pertinent paragraph, it notes the following:

> "To **request an exemption for medical or religious reasons**. Check the box "I am requesting a medical or religious exemption", and you will be provided additional

instructions. Review of exemption applications will take approximately 15 days and will be conducted by a panel of medical experts including a representative from Human Resources. If your exemption is granted, your **My Checklist** section of the app will have an automatic check mark. If your exemption request is not granted, you will receive notification from us. You will be unable to access campus in the future as you will receive a "red pass" when opening your app." See, <u>May 27, 2021: Vaccine Mandate Update for Faculty, Researchers and Staff | Columbia University Irving Medical Center,</u> (last visited January 24, 2025).

20)  On or around June 6, 2021, Plaintiff was diagnosed with necrotizing fasciitis(fournier's gangrene) which required emergency debridement surgery at Mount Sinai Morningside.

21) Plaintiff informed AUS supervisor- Tania Shepherd who recommended Plaintiff keep AUS abreast of his medical status and recommended Plaintiff file for FMLA through party administrator- Reed Group.

22) Plaintiff applied for the open Security Guard position with Columbia University under Requisition No, 510591 on June 9, 2021.

23) In relation to his FMLA leave regarding his ongoing medical condition, Plaintiff had to involve Union representation-32BJ due to the lack of response from AUS in submitting his FMLA paperwork in a timely manner. Union representatives Carol Rothman intervened on behalf of Plaintiff in order to obtain short term disability for the Plaintiff with a clearance for return to work on October 15, 2021.

24) On or around July 29, 2021, Columbia/AUS notified its employees and contractors that they must receive at least the 1st dose of the vaccine by the deadline of September 2, 2021.

25) On or around July 28, 2021, Defendant Columbia University sent Plaintiff a CUFO Printed Screening Form for Service Personnel ( **Pl's Exhibit 3**). The form was merely an inquiry of any COVID symptoms and provided no medical or religious exemptions nor vaccination policy.

26) On or around July 29, 2021, Plaintiff was contacted by telephone by Jimmy Lai of Columbia University inviting him for a job interview directly with Columbia.

27) During the July 29,2021 telephone conversation with Columbia representative Mr. Jimmy Lai, Plaintiff was transparent in informing Columbia's representative about (a) FMLA status; (b) temporary physical limitations and appearance due to his ongoing recovery from surgery; and, (c) his intention to seek a religious exemption or accommodation to Columbia/AUS vaccination mandate policy.

28) On or around August 5, 2021, Plaintiff presented casually dressed due to the open wound before Columbia University interviewers – Branco Yurisak and Luis Rodriguez.

29) On or around August 5, 2021, at the interview, Plaintiff was told in a hostile and threatening manner that he must be vaccinated to obtain employment within the institution. Thus, Plaintiff responded by requesting written notice/accommodation due to his religious beliefs. At this point, the Columbia representative terminated the interview process and gave feedback asserting Plaintiff was not qualified for the position due to the dress code despite prior knowledge of his ongoing FMLA related injury.

30) On or around September 2, 2021 in retaliation to Plaintiff's direct interview, Defendant AUS terminated Plaintiff prior to the slated return to work as slated on October 15, 2021.

31) On or around November 16, 2021, Plaintiff spoke by telephone with AUS representatives - Mr. Albert Speaker and James Gates, that he was requesting a religious exemption, and was advised Columbia University does not accept Religious Exemptions, and by virtue, New York State does not allow religious exemption.

32) Plaintiff responded to the above characterization by the AUS representative, by advising them that it was misinformation not supported by the publication on Columbia's University's website allowing for religious exemptions. AUS representative response was to threaten Plaintiff that he either got vaccinated or not return to work.

33) Plaintiff, a devout Muslim obtained, a November 23, 2021 Moorish Science Temple of America Inc, #13, 21-3 "Accommodation for Religious Belief and Vaccine Exemption" Letter to be supplied to his direct employer AUS and by virtue Columbia University.

34)    The Defendants knew or ought to have known, the vaccine mandate did not go into effect for New York City until December 27, 2021 by an Executive Order No. 317 from Mayor De Blasio. In an attempt to be proactive. Defendant's overstepped boundaries; failed to effectuate clear policy on religious accommodation specific to the COVID-19 virus; and, improperly impeded Plaintiffs constitutionally protected rights.

35)    The De Blasio Executive Order mandated private sector employees in New York City and included provisions for religious exemptions contrary to the policy to be effectuated by Columbia and AUS unilaterally predating federal and state policy. "This provision shall not

excuse the employer from the responsibility to provide a reasonable accommodation where required by law." Executive Order No. 317. **(Pl.'s Exhibit 4)**.

36) On or around December 27, 2021, Plaintiff received an email from Allied Universal representative Heather Lanza with a subject heading noting "Allied Universal- Vaccine update (response required). In pertinent parts, the email notes:

> "NYC vaccine mandate went into effect, "All Public employees are either required to be vaccinated, have at least one vaccine done or have a reasonable accommodation request on file with their employer. Do not have any information from you that meets these requests. Will not be able to work from now (12/28/21) without it. Text VAX to 949-266-5047 (VAX.AUS.COM) or complete a reasonable accommodation request. One of the three needs to be completed**."**

37) Plaintiff's request for accommodation/exemption was supplied to AUS and its representative-Ms. Lanza on December 28, 2021.

38)    On or around January 17, 2022, Johnny DeJesus of AUS called Plaintiff to inquire on the status of COVID vaccination. Plaintiff reiterated and maintained his position about seeking an exemption/accommodation from the mandate before he could return to work especially in light of the NY Supreme Court ruling allowing for religious and medical exemptions. AUS Johnny DeJesus advised he would return to Plaintiff with a response as soon as possible.

39)    On or around February 9, 2022, Bonita Mercado of AUS advised Plaintiff that he had to be vaccinated under the Biden mandate. Plaintiff informed Mercado that he had sought an

9

exemption from the vaccination mandate. AUS-Mercado advised that the legal department would be consulted, and a response be forthcoming.

40)    On or around February 9, 2022, Plaintiff received a call from Ed Callahan of Allied Universal Regional Human Resources Manager inquiring as to Plaintiff's return to work date. Plaintiff was transparent in explaining his experience in following the protocol and policy of both entities only to be met with hostile treatment for mandating fairness for rights he is entitled to under internal, state and federal rules and yet still be terminated for no just cause. Mr. Callahan stated he would help Plaintiff and get back to him swiftly.

41)    On or around February 18, 2022, Mr. John Falco of Allied Universal Regional VP called Plaintiff requesting his return to work status. Plaintiff responded he had not received a response to his request for a religious exemption. Again, Mr. Falco advised Plaintiff that he get vaccinated or not return to work.

42)    On September 9, 2022, AUS sent a "voluntary exit interview survey" to Plaintiff which was far from the truth on the facts of this case. **Pl.'s Exhibit 5.** Plaintiff was terminated and did not leave voluntarily from AUS and by virtue of his position with Columbia University.

43)    For over a year, both Defendants could not provide Plaintiff with a COVID-19 vaccination exemption/accommodation decision whether in light of their internal policy or in compliance with the federal/state mandates.

44)    Defendant AUS had a prior history of religious discrimination in violation of Title VII prior to the COVID outbreak against a guard of the Muslim faith. As part of its resolution with the Federal government institutional reforms including Title VII compliance monitoring.

anti-discrimination training, and improved religious accommodation protocols that would be devoid of subjecting job applicants and employees from religious discrimination and retaliation in violation of Title VII and the federal Decree. See, EEOC v. Universal Protection Services, LP. No. 3:17-cv-02436-BEN-NLS.

45)  Despite the Federal decree implemented nationwide to all AUS locations in English and Spanish in 2018 and subject to a yearly audit inclusive of a monitor regarding accommodation policies and no retaliation policy. Plaintiff still found himself subject to religious discrimination from AUS and by virtue its client- Columbia University.

45)    As part of the resolution of that complaint, Plaintiff AUS was required to retain an equal employment monitor to review and revise its religious accommodation policies to comply with Title VII. Defendant failed to make such reasonable accommodation to Plaintiff under Title VII or use an equal employment monitor in rendering a decision on accommodation/exemption with respect to its internal policy and/or Columbia University's policy.

46)    The above public settlement from AUS is admissible under the NY and federal rules of evidence as it is attached to this complaint as prior complaint resulting in settlement as notice of possible or actual constitution violation. See, Calderon v. City of N.Y., 138 F. Supp 3d 393 (W.D.N.Y. 2021). Likewise, its proof of bias and prejudice from AUS negates a contention of undue delay in responding to religious exemption per USCS Fed. Rule Evid R. 408, Greer v. Gates Chili Cent., 577 F. Supp. 3d 147 (W.D.N.Y. 2021).

47)    Defendant Columbia University has prided itself on its 99% COVID Compliance rate and its application of the religious or medical exemptions to its students, employees. staff and affiliates in submitting their request on its electronic platform. This is an admirable standard in

11

promoting safety and reducing death rates in NYC. However, in being proactive it failed to give Plaintiff a fair hearing during its interview process despite prior knowledge and proof of a sincerely held belief supported by a religious official. It failed to honor its own preliminary verbal accommodation to Plaintiff regarding its relaxed dress code and its vaccination mandate.

## FIRST CAUSE OF ACTION: TITLE VII RELIGIOUS DISCRIMINATION AS TO COLUMBIA UNIVERSITY AUGUST 2021 INTERVIEW.

48) Plaintiff incorporates paragraph 1 through 47 by reference.

49) Plaintiff is a practicing muslim and a member of a protected class under Title VII.

50) Plaintiff applied for a direct hire security officer position with Columbia University for which he was fully qualified based on his prior work experience on the Columbia campus, including years of incident -free employment through Allied Universal.

51) During the application process, Plaintiff informed Columbia of his religious objection to the COVID - 19 vaccination and his intention to request a religious exemption, in accordance with Columbia's stated policy.

52) Instead of processing or allowing this request. Columbia interviewers terminated the process, citing Plaintiff's appearance- despite having prior knowledge of his medical limitations due to surgery and FMLA leave.

53) Columbia's stated rationale was a pretext, Plaintiff's appearance had been pre-cleared and the abrupt termination of the interview followed directly after his request for religious accommodations.

54) Columbia failed to follow its own state exemption policy and acted with discriminatory intent, treating Plaintiff's religious belief as disqualifying, which constitutes a violation of Title VII.

## SECOND CAUSE OF ACTION: TITLE VII RELIGIOUS DISCRIMINATION AS TO ALLIED UNIVERSAL SERVICES

55) Plaintiff incorporates paragraphs 1 through 47 by reference.

56) Plaintiff is a practicing muslim and a member of a protected class under Title VII.

57) Plaintiff was employed by Defendant Allied Universal from November 2019 through 2021 with a spotless record and no disciplinary history.

58) Plaintiff notified AUS of his religious exemption request and submitted appropriate documentation from a recognized religious body.

59) AUS failed to process, respond to, or evaluate Plaintiff's religious exemption request in a timely or meaningful way.

60) This refusal to accommodate, and eventual termination of Plaintiff, constitutes adverse actions taken because of Plaintiff's religious beliefs and requests in violation of Title VII.

61) AUS failed to process, respond to, or evaluate Plaintiff's religious exemption request in a timely or meaningful way.

62) This refusal to accommodate, and eventual termination of Plaintiff, constitute adverse actions taken because of Plaintiff's religious beliefs and requests, in violation of Title VII.

## CAUSE ACTION THIRD: RETALIATION UNDER TITLE VII BY ALLIED
## UNIVERSAL

63)    Plaintiff incorporates by reference paragraph 1 through 47.

64)    Plaintiff engaged in protected activity under Title VII by formally requesting a religious exemption to the employer's COVID-19 vaccine mandate.

65)    Shortly after asserting this right, Plaintiff was denied re-entry to work, threatened, a and ultimately while on approved medical leave with a scheduled return date.

66)    The timing and circumstances of these actions - combined with AUS's failure to comply with federal accommodation procedures-establish a strong inference of retaliatory motive, in violation of Title VII.

## FOURTH CAUSE OF ACTION:  INFLICTION OF EMOTIONAL DISTRESS

67)    Plaintiff realleges paragraph 1 through 58 and incorporates by reference herein.

68)    By virtue of the above stated matters, the Defendant's conduct was unlawful.

69)    The Defendants' knew or ought to know, or was reckless or negligent that its actions were apt  to cause psychiatry injury, anxiety, emotional distress, insomnia.  humiliation, embarrassment, and,  stigmatization.

70)    Defendant's conduct caused Plaintiff to suffer wage loss and damages and to suffer severe emotional distress.

14

**RELIEF SOUGHT BY PLAINTIFF**

WHEREFORE, Plaintiff demands a judgment as follows:

1.  Compensatory damages for lost wages, housing instability, emotional distress, and reputational harm.

2.  Back pay and reinstatement or equivalent employment opportunity.

3.  Front pay, given the long-term impact on his career and earnings.

4.  Reasonable attorney fees and costs as allowed under federal law.

5.  A formal written apology and acknowledgment of wrongdoing.

6.  Institutional reforms including Title VII compliance monitoring, anti-discrimination training, and improved religious accommodation protocols. *EEOC v. Universal Protection Services, LP*, No. 3:17-cv-02436-BEN-NLS; No federal monitoring was used in this case a deviation from the terms of operation from the federal government.

7.  Written Confirmation of Columbia's and AUS's current exemption policies and any process for religious accommodation.

8.  Total monetary compensation in the amount of $13 million, reflecting:

    ■   $3 million in economic loss (past and future)

    ■   $7million for emotional distress and reputational harm,

    ■   $3 million in punitive damages based on willful violation and systemic failure to comply with federal law.

15

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated: June 13th, 2025.


                                              Respectfully submitted,

                                              By:_ */s/ Adebukola Ogunsanya*
                                         ADEBUKOLA OGUNSANYA, ESQ
                                         State Bar No.5679816
                                         343 Fifth Avenue
                                         RiverEdge NJ 07661
                                         Tel: 551-214-9964
                                         Email: Ogunjdapp@gmail.com

16

## **VERIFICATION**

I, ELDIVINE STARKIM ALLAH-EL, being duly sworn, depose and days:

I am the Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge ss, except, as to matters there said to be alleged on information and belief and as to those matters, I believe them to be true.

Sworn to before This ___ Day of June 2025.

Signature: _____

HOSSAIN MOHAMMED N
NOTARY PUBLIC, STATE OF NEW YORK
01HO6356839
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES APRIL 10, 20__

Date: 06-16-202

17